## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

EMILY   JESSICA   BONILLA,   *o/b/o*
N.L.M.,

                Plaintiff,

      v.

KILOLO KIJAKAZI,[1]

              Defendant.

CIVIL ACTION NO. 3:20-CV-02217

(MEHALCHICK, M.J.)

### MEMORANDUM

Plaintiff Emily Jessica Bonilla ("Bonilla") brings this action on behalf of her minor daughter ("N.L.M.") under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Childs' Supplemental Security Income ("SSI") on behalf of N.L.M. under Title XVI of the Social Security Act. (Doc. 1). For the following reasons, the Commissioner's decision will be **AFFIRMED**.

### I.   BACKGROUND AND PROCEDURAL HISTORY

On April 24, 2018, Bonilla filed an application for benefits under Title XVI of the Social Security Act on behalf of N.L.M. for SSI benefits alleging an onset date of January 1, 2014. (Doc. 10-2, at 17). Bonilla's application for benefits was initially denied on August 15,

---

[1] The Court has amended the caption to replace, as the named defendant, Social Security Commissioner Andrew M. Saul, with his successor, Social Security Commissioner Kilolo Kijakazi. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

2018, and Bonilla filed a timely request for a hearing, which Administrative Law Judge Sharon Zanotto ("ALJ") held on September 19, 2018. (Doc. 10-2, at 17). In a December 11, 2019, written decision, the ALJ determined that N.L.M. is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 10-2, at 40). On October 1, 2020, the Appeals Council subsequently denied Bonilla's request for review. (Doc. 10-2, at 2).

On November 28, 2020, Bonilla commenced the instant action. (Doc. 1). The Commissioner responded on April 7, 2021, providing the requisite transcripts from N.L.M.'s disability proceedings. (Doc. 9; Doc. 10). The parties then filed their respective briefs, with Bonilla raising three principal bases for reversal or remand. (Doc. 18; Doc. 26). This matter is now ripe for decision.

## II.    STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and the Court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.  A claimant under the age of 18 ("child") shall be considered disabled for under Title XVI of the Social Security Act if she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. §416.906. Notwithstanding the above, no child who engages in substantial gainful activity, as defined by the Social Security regulations, may be found disabled. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. §416.906.

The ALJ employs a three-step evaluation process to determine whether a child is eligible for SSI payments because of disability. As part of this analysis, the ALJ must sequentially determine: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a medically determinable, severe impairment; (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in  20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.924. If the ALJ finds that the child is not disabled at any point in the sequence, review does not proceed further. 20 C.F.R. § 416.924.

In determining functional equivalence, the ALJ evaluates the following six domains of functioning: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment is functionally equal to a listed impairment when it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A marked limitation is more than moderate but less than extreme. 20 C.F.R. § 416.926a(e)(2)(ii). An impairment that only meets some of the criteria of a listed impairment, "no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether N.L.M. is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

4

In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Rather, the court reviews the ALJ's findings to determine whether they were supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the decision of the ALJ is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

For effective judicial review to take place, the court "need[s] from the ALJ not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

## III.    THE ALJ'S DECISION

The ALJ proceeded through the three-step sequential evaluation process to determine whether N.L.M., as an individual under the age of eighteen (18), is disabled. 20 C.F.R. § 416.924(a); (Doc. 10-2, at 18-30). At step one, the ALJ concluded that N.L.M. has not been engaged in any substantial gainful activity since her application date of April 24, 2018. (Doc. 10-2, at 18). The ALJ then proceeded to step two and determined that N.L.M. has the following severe impairments: Attention Deficit Hyperactivity Disorder ("ADHD"),

disruptive mood dysregulation disorder, and unspecified anxiety disorder. (Doc. 10-2, at 18). Next, at step three, the ALJ determined that N.L.M. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 in effect on the date the ALJ issued her opinion. (Doc. 10-2, at 18-19). Specifically, the ALJ considered Listings 112.04 – Depressive, bipolar and related disorders, 112.06 – Anxiety and obsessive-compulsive disorders, and 112.11 – Neurodevelopmental disorders. (Doc. 10-2, at 18-19).

In determining step three, the ALJ addressed the six domains of functioning and concluded that N.L.M. does not have an impairment or combination of impairments that functionally equals the severity of one of the listed impairments. (Doc. 10-2, at 19). The ALJ concluded that N.L.M. has: (1) less than a marked limitation in acquiring and using information; (2) less than a marked limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked limitation in the ability to care for herself; and (6) a marked limitation in health and physical well-being. (Doc. 10-2, at 20). Based on this analysis, the ALJ concluded N.L.M. has not been disabled, as defined by the Social Security Act, since April 24, 2018, the date the application was filed. (Doc. 10-2, at 29).

## IV.    DISCUSSION

Bonilla raises three issues on appeal. (Doc. 18, at 1-2). First, she contends that the ALJ "erred and abused her discretion by failing to properly consider [N.L.M.'s] limitations under the Functional Domains, when considering [her] severe impairments . . .  including [ADHD], disruptive mood dysregulation disorder[,] and unspecified anxiety disorder." (Doc. 18, at 14). Next, Bonilla asserts the ALJ erred in finding N.L.M.'s other impairments, including her

depressive disorder, obsessive compulsive disorder ("OCD"), developmental language disorder, and insomnia, not severe, and thereby failing to consider them in her functional domain analysis. (Doc. 18, at 19). Lastly, Bonilla argues that the ALJ erred in failing to afford proper weight to the treating source opinion of Mr. Hartman and the teacher questionnaire completed by Ms. Moyer. (Doc. 18, at 22). The Court concludes that substantial evidence supports the ALJ's decision.

A. Substantial evidence supports the ALJ's decision that N.L.M.'s severe impairments do not functionally equal a listing.

First, Bonilla argues that "[t]he ALJ erred and abused her discretion by failing to properly consider [N.L.M.'s] limitations under the Functional Domains, when considering [her] severe impairments as identified by the ALJ, including [ADHD], disruptive mood dysregulation disorder, and unspecified anxiety disorder." (Doc. 18, at 14). Bonilla contends the limitations caused by N.L.M.'s severe impairments are consistent with findings of marked limitations in the domains of (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) caring for herself. (Doc. 18, at 17). However, to the extent Bonilla asks the Court to re-weigh the record evidence or make new factual findings, the Court may not invade the ALJ's province as a finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion would have been reached, but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15-CV-1066, 2015 WL 8013037, at *9 (M.D. Pa Dec. 7, 2015). Substantial evidence supports the ALJ's findings that N.L.M has less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for herself. (Doc. 10-2, at 20).

7

Bonilla argues that the ALJ failed to consider her testimony regarding N.L.M.'s limitations, the services that were provided to N.L.M., and N.L.M.'s response to and length of treatment which would all indicate at least a finding of marked limitations in the functional domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. (Doc. 18, at 16-19).

The ALJ specifically addressed Bonilla's testimony as it applied to the functional domains of caring for oneself, acquiring and using information, attending and completing tasks, and interacting and relating with others. (Doc. 10-2, at 24-28). Additionally, the ALJ discussed the lack of educational services that were provided to N.L.M. stating that she "does not have any special education needs such as accommodations, or even summer school" and outlined N.L.M.'s medical services that she received from WellSpan Philhaven Psychiatry and Therapy group ("WellSpan") and her medical history including "history of short statute disorder, Pica of infancy and childhood, Developmental language disorder, and Behavioral insomnia of childhood, combined type." (Doc. 10-2, at 21-23, 25, 27; Doc. 10-6, at 74-78; Doc. 10-7, at 4, 9-36). Finally, the ALJ outlined the medical treatment that N.L.M. received in a detailed timeline spanning from February 10, 2018, to March 29, 2019, and specifically discussed the therapy treatment provided to her by Mr. Hartman. (Doc. 10-2, at 22-23, 29; Doc. 10-7, at 9-36).

1. **Substantial evidence supports the ALJ's finding that N.L.M. has less than a marked limitation in the functional domain of acquiring and using information and attending and completing tasks.**

Bonilla argues that the ALJ erred in finding that N.L.M. suffers from a less than marked limitation in acquiring and using information and a less than marked limitation in attending and completing tasks. (Doc. 18, at 17).

When evaluating a child's limitations in the domain of acquiring and using information, the ALJ must consider how well the child acquires or learns information, and how well the child uses the information he or she has learned. 20 C.F.R. § 416.926a(g). Some examples of limitations in this domain include: not demonstrating an understanding of words about space, size, or time; an inability to rhyme words or the sounds in words; having difficulty recalling important things that were learned in school the previous day; difficulty in solving mathematics questions; only talking in short, simple sentences; and having difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3)(i)-(v).

When evaluating a child's ability in the domain of attending and completing tasks, the ALJ must consider how well the child is able to focus and maintain her attention, and how well the child begins, carries through, and finishes her activities, including the pace at which the child performs activities and the ease in which the child changes between them. 20 C.F.R. § 416.926a(h). Some examples of limitations in this domain include: being overly startled, distracted, or over-reactive to sounds, sights, movements, or touch; being slow to focus on, or failing to complete activities of interest to the child; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks, including those the child is capable of completing; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3)(i-v).

Bonilla argues that N.L.M.'s identified severe impairments of ADHD, disruptive mood dysregulation disorder, and unspecified anxiety disorder warrant a finding of a marked limitation in the functional domains of acquiring and using information and attending and completing tasks. (Doc. 18, at 17). However, the ALJ addressed N.L.M.'s severe impairments through substantial evidence from the record in deciding that she has less than marked

limitation in acquiring and using information and attending and completing tasks. (Doc. 10-2, at 26-27).

The ALJ discussed relevant record evidence directly relating to the applicable functional domain in reaching her determination. (Doc. 10-2, at 26-27). The ALJ considered Bonilla's testimony and responses to the agency function report; the teacher questionnaire from N.L.M.'s school counselor, Ms. Moyer; N.L.M.'s education records; and N.L.M.'s ability to learn and participate in new activities. (Doc. 10-2, at 26-27).

The ALJ concluded that N.L.M. "has a less than marked degree of limitation in the domains of Acquire and Use Information and Attending and Completing Tasks." (Doc. 10-2, at 27). First, the ALJ examined Moyer's answers to the teacher questionnaire form. (Doc. 10-2, at 26-27; Doc. 10-6, at 28-29).

> In determining the persuasiveness of Ms. Moyer's responses in the agency Teacher Questionnaire, I considered that Ms. Moyer was a school counselor and only saw [N.L.M.] once every few months. Ms. Moyer also added comments that [N.L.M.] had significantly improved with medication. This indicated to me that the severity of the limitations may not have been an accurate assessment and instead, the objective grades, in 2018-2019, showing excellent, advanced, and highly proficient in the most subjects is a better indication of limitations under these domains. Further, [N.L.M.] has been in the regular classroom and does not have any special education needs such as accommodations, or even summer school.

> (Doc. 10-2, at 27; Doc. 10-6, at 28-29).

Next, the ALJ considered and summarized Bonilla's testimony and responses to the agency function report. (Doc. 10-2, at 26-27). Bonilla stated that N.L.M. "takes 20 minutes to do her homework and she gets distracted every five minutes. She loses focus. As for paying attention and sticking to a task . . . [N.L.M.] can keep busy on her own." (Doc. 10-2, at 26; Doc. 10-6, at 13). The ALJ concluded that N.L.M.'s

10

ability to learn to ride horses, swim, and do gymnastics, also indicates that [N.L.M.] is able to function in these areas with no more than a less than marked limitation. I find for less than marked limitations in consideration of [Bonilla's] testimony that she is easily distracted and at times needs constant reminders."

(Doc. 10-2. at 27, 52-55, 60).

Accordingly, the ALJ cited to substantial evidence indicating less than marked limitations in the areas of acquiring and using information and attending and completing tasks. (Doc. 12-2, at 20).

> **2.   Substantial evidence supports the ALJ's finding that N.L.M. has less than a marked limitation in the functional domain of interacting and relating with others.**

Bonilla argues that the ALJ erred in finding that N.L.M. suffers from less than marked limitation in interacting and relating with others. (Doc. 18, at 17). When evaluating a child's limitations in the area of "interacting and relating with others" an ALJ considers how well the child initiates and sustains emotional connections with others, develops and uses the language of his or her community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). Examples of limitations in this domain include: having no close or age appropriate friends; avoiding or withdrawing from people the child knows; being overly anxious or fearful when meeting new people or trying new experiences; difficulty cooperating with others; having difficulty playing games or sports with rules; and difficulty communicating with others (i.e., difficulty in using appropriate verbal and nonverbal cues when expressing him or herself, carrying on a conversation, or asking others for assistance); and difficulty in speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3)(i)-(vi); SSR 09-5p, 2009 WL 396026 at *6-7.

11

Bonilla argues that N.L.M.'s identified severe impairments of ADHD, disruptive mood dysregulation disorder, and unspecified anxiety disorder warrant a finding of a marked limitation in the functional domain of interacting and relating with others. (Doc. 18, at 17). However, the ALJ addressed N.L.M.'s severe impairments through substantial evidence from the record in deciding that she has less than marked limitation in interacting and relating with others. (Doc. 10-2, at 27-28).

The ALJ considered the testimony and agency function report of Bonilla along with Ms. Moyer's teacher questionnaire and N.L.M.'s school reports and therapy notes. (Doc. 10-2, at 28; Doc. 10-6, at 7, 10, 30, 32, 75; Doc. 10-8, at 10-35)

The ALJ noted that

> [i]n 2018-2019, the school report included comments by her teachers that she had a positive attitude and engaged in call discussions. [N.L.M.] was able to make friends. Moreover, the mental therapy notes indicate periods of hyperactivity, but they also generally show that [N.L.M.] is able to interact effectively and showed significant improvement when medication was started.

(Doc. 10-2, at 28; Doc. 10-6, at 75; Doc. 10-8, at 10-35).

Additionally, the ALJ considered Bonilla's testimony that N.L.M. sometimes has difficulty being understood by others, has difficulty when she is in a bad mood or crying, will talk for three days and then stop, and cannot explain why she does bad things. (Doc. 10-2, at 28; Doc. 10-6, at 6-7). The ALJ also comparted these facts with Bonilla's testimony that N.L.M. "can make new friends, gets along with friends her age, . . . likes younger children . . . and gets along with teachers when she is on the medication." (Doc. 10-2, at 28; Doc. 10-6, at 10). The ALJ considered this testimony along with Ms. Moyer's opinion that she had no difficulty understanding N.L.M.'s speech; that N.L.M. has slight problems relating experiences, telling stories, and using appropriate language; that N.L.M. has obvious problems playing with

others; and serious problems in expressing anger appropriately, following the rules, respecting and obeying adults in authority, and seeking attention appropriately, playing cooperatively with other children, and making and keeping friends. (Doc. 10-2, at 28; Doc. 10-6, at 30, 32). Additionally, the ALJ noted Ms. Moyer's statement that N.L.M. acted "significantly better when on medication . . . [and when she is] not on medication [she] needs a lot of refocus and repetition." (Doc. 10-2, at 28; Doc. 10-6, at 30).

Thus, the ALJ considered and cited to substantial evidence regarding N.L.M.'s limitations in the functional domain of interacting and relating with others. (Doc. 10-2, at 28).

### 3. Substantial evidence supports the ALJ's finding that N.L.M. has less than a marked limitation in the functional domain of caring for oneself.

Bonilla argues that the ALJ erred in finding that N.L.M. suffers from less than marked limitations in the ability to care for herself. (Doc. 18, at 17). The regulations on the domain of caring for yourself explain the evaluation criteria, in pertinent part, as follows:

> In this domain, we consider how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area.

> School-age children (age 6 to attainment of age 12). You should be independent in most day-to-day activities (e.g., dressing yourself, bathing yourself), although you may still need to be reminded sometimes to do these routinely. You should begin to recognize that you are competent in doing some activities and that you have difficulty with others. You should be able to identify those circumstances when you feel good about yourself and when you feel bad. You should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior. You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you. You should begin to imitate more of the behavior of adults you know.

> 20 C.F.R. §§ 416.926a(k); (k)(2)(iv).

13

Bonilla argues that N.L.M.'s identified severe impairments of ADHD, disruptive mood dysregulation disorder, and unspecified anxiety disorder warrant a finding of a marked limitation in the functional domain of caring for oneself. (Doc. 18, at 17). However, the ALJ addressed N.L.M.'s severe impairments through substantial evidence from the record in deciding that she has less than marked limitation in caring for herself. (Doc. 10-2, at 24-25).

The ALJ considered Bonilla's testimony and agency function report, Ms. Moyer's teacher questionnaire responses, N.L.M.'s school record and medical history, and her ability to engage in activities. (Doc. 10-2, at 24-25, 53-57, 65-66; Doc. 10-6, at 11, 31, 74-75; Doc. 10-7, at 4-5, 22, 34; Doc. 10-8, at 31, 34-35).

The ALJ found that

> [t]he record is impressive as far as the [N.L.M.'s] ability to engage in a wide variety of activities and to excel in school. [N.L.M.] is independent in self-care activities, although she needs reminders and this is age appropriate for six and seven year old school children. In consideration of [Bonilla's] testimony concerning [N.L.M.'s] eating habits, nail biting, and difficulty with transitioning, I find less than marked limitations.

(Doc. 10-2, at 25).

First, the ALJ considered Bonilla's answers to the agency function report. (Doc. 10-2, at 24; Doc. 10-6, at 11). Bonilla stated that N.L.M has difficulty with buttons; needs assistance with bathing, brushing her teeth, and doing her hair; and does not like to do these things. (Doc. 10-2, at 24; Doc. 10-6, at 11). The ALJ also considered Bonilla's testimony that N.L.M. can accomplish some daily tasks on her own like dressing and feeding herself. (Doc. 10-2, at 25, 55; Doc. 10-6, at 11). However, the ALJ also noted that Bonilla testified that "[g]etting ready for school is very complicated" because she takes a lot of time to get ready and does not like school. (Doc. 10-2, at 25, 53, 57; Doc. 10-7, at 22). Additionally, Bonilla stated that N.L.M.

14

"will resist doing activities that she does not want to do." (Doc. 10-2, at 25, 54-55). Bonilla also stated that she does not take N.L.M. out to dinner because it is too hard and that it is difficult to take N.L.M. to the store because she will not stay around Bonilla. (Doc. 10-2, at 25, 65-66). Additionally, Bonilla states that N.L.M. fears getting older, does not put her toys away, and is not good with transitioning. (Doc. 10-2, at 25, 55-56, 66; Doc. 10-6, at 11; Doc. 10-7, at 22). The ALJ also noted that N.L.M. enjoys a variety of activities that require discipline and control and that she "can do these activities independently, showing she is able to complete tasks without being unduly distracted." (Doc. 10-2, at 25, 52-55, 60).

Next, the ALJ considered the teacher questionnaire completed by Ms. Moyer. (Doc. 10-2, at 24-25; Doc. 10-6, at 31). Ms. Moyer stated that N.L.M. has no problem taking care of personal hygiene, caring for physical needs, cooperating in, or being responsible for, taking needed medications; a slight problem using good judgment regarding personal safety and dangerous circumstances on a month basis; an obvious problems handling frustration appropriately, responding appropriately to changes in mood, identifying and appropriately asserting emotional needs on a weekly basis; and serious problems being patient when necessary, using appropriate coping skills to meet daily demands of the school environment, and knowing when to ask for help on a daily basis. (Doc. 10-2, at 24-25; Doc. 10-6, at 31).

Third, the ALJ considered N.L.M.'s school performance noting that "she is able to control her emotions for full school days, including time spent in the after school program." (Doc. 10-2, at 25; Doc. 10-6, at 75; Doc. 10-7, at 34; Doc. 10-8, at 31, 34-35). The ALJ noted N.L.M.'s lack of disciplinary record that "shows that she is developing an understanding of what is acceptable and unacceptable behavior." (Doc. 10-2, at 25; Doc. 10-6, at 74-75).

15

Finally, the ALJ looked to N.L.M.'s medical history noting her "history of short stature disorder, Pica of infancy and childhood, Developmental language disorder, and Behavioral insomnia of childhood, combined type." (Doc. 10-2, at 25; Doc. 10-7, at 4). The ALJ also considered that N.L.M. has not demonstrated any developmental delays and her pediatric records from March 7, 2017, demonstrate normal exams with her weight at the 44th percentile and height at the 55th percentile. (Doc. 10-2, at 25; Doc. 10-7, at 5).

Thus, the ALJ considered substantial evidence regarding N.L.M.'s limitations when she determined that N.L.M. has less than marked limitations in the functional domain of caring for oneself. (Doc. 10-2, at 24-25).

The ALJ presents substantial evidence in considering all of N.L.M.'s functional domains. (Doc. 10-2, at 19-29). In so far as Bonilla contends that the ALJ failed to discuss specific evidence pertaining to N.L.M.'s ADHD, disruptive mood dysregulation disorder, and unspecified anxiety disorder "the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. The ALJ also adequately explained her decision because she gave "not only an expression of the evidence [she] considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705. Thus, substantial evidence supports the ALJ's finding of a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself. (Doc. 10-2, at 19-29).

B. Substantial evidence supports the ALJ's decision that N.L.M.'s other impairments, including depressive disorder, OCD, developmental language disorder, and insomnia did not functionally equal a listing.

Bonilla asserts that the ALJ failed to consider N.L.M.'s depressive disorder, OCD, developmental language disorder, and insomnia when assessing her functional domains. (Doc. 18, at 19). Bonilla states that the above limitations were not referenced in steps three, four, or five of the ALJ's decision; that the medical records and Bonilla's testimony support a finding that the above limitations are severe; and that the above limitations "clearly have more than a slight impact on [N.L.M.'s] ability to function, and should have been considered" by the ALJ. (Doc. 18, at 19-21). The Commissioner asserts that N.L.M.'s functional limitations stemming from her mental conditions were fully contemplated. (Doc. 26, at 27-28).

The ALJ's severity determination at step two must be upheld if it is supported by substantial evidence. *Bricker v. Astrue*, No. 10-cv-458, 2010 WL 4984214, at *4 (W.D. Pa. Dec. 2, 2010); *citing McCrea v. Commissioner of Soc. Sec.*, 370 F.3d 357, 360–61 (3d Cir. 2004). "In a child's claim for benefits, an impairment is not severe if the evidence establishes no more than a minimal effect on a claimant's ability to function in an age-appropriate manner." *Bricker*, 2010 WL 4984214, at *4 (citing 20 C.F.R. § 415.924(c)). Additionally, "even if the record could sustain an alternative conclusion, the ALJ's decision regarding disability will not be overturned as long as there is substantial evidence to support it." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (examining *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)).

In considering N.L.M.'s mental impairments, the ALJ examined Listings 112.04 – depressive, bipolar and related disorders, 112.06 – anxiety and obsessive-compulsive disorders, and 112.11 – neurodevelopmental disorders and found that N.L.M.'s mental

impairments did not meet or medically equal any of the listed impairments. (Doc. 10-2, at 18-19). The ALJ stated that N.L.M. has a moderate limitation in her ability to understand, remember, or apply information; interact and relate with others; and concentrate, persist, or maintain pace. (Doc. 10-2, at 18-19). The ALJ also stated that N.L.M. has a marked limitation in adapting or managing herself. (Doc. 20-1, at 19). The ALJ supported these findings with references to her determinations in assessing N.L.M.'s functional domains. (Doc. 10-2, at 18-19). As discussed *supra*, the ALJ cited to substantial evidence in concluding that N.L.M. exhibited less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself. (Doc. 10-2, at 20-28). However, the ALJ found that "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation" the criteria for finding an impairment is not satisfied. (Doc. 10-2, at 19). Additionally, the ALJ considered alternate criteria in determining if N.L.M.'s impairments met or medically equaled a listed impairment. (Doc. 10-2, at 19). However, the ALJ found that

> the record fails to show indication of ongoing treatment or use of a highly structured setting, which diminishes [N.L.M.'s] symptoms or signs. Nor is there evidence of marginal adjustment (e.g., minimal capacity to adapt to changes in the environment or to demands that are not already part of the claimant's daily life). [N.L.M.] does not live in a structured environment. She was participating in monthly therapy in 2018 and was on medication for ADHD symptoms and sleep. She has not required acute treatment for a mental impairment. While in school, she is on grade level and in the regular classroom without special education needs or accommodations.

> (Doc. 10-2, at 19).

Additionally, the ALJ considered the opinion evidence from Dr. Gavazzi, PsyD and Mr. Hartman, licensed professional counselor ("LPC") who discussed N.L.M.'s mental impairments. (Doc. 10-2, at 29; Doc. 10-3, at 4-7; Doc. 10-7, at 59).

The ALJ considered N.L.M.'s limitation of developmental language disorder in assessing her limitations. Specifically, the ALJ mentioned N.L.M.'s developmental language disorder when assessing the functional domain of caring for oneself. (Doc. 10-2, at 24-25; Doc. 10-7, at 4). Additionally, the ALJ mentioned N.L.M.'s linguistic abilities throughout her opinion. (Doc. 10-2, at 21). First, the ALJ noted that N.L.M. did not require speech therapy and that during the 2018-2019 school year, N.L.M.'s educational records stated that "she was advanced and outstanding" in Language. (Doc. 10-2, at 21; Doc. 10-6, at 75; Doc. 10-7, at 44). Next, when assessing N.L.M.'s ability to acquire and use information and her ability to attend and complete tasks, the ALJ noted that in First Grade N.L.M. "was on grade level for . . . Written Language" and was not in special education and in Second Grade N.L.M. was "advanced and outstanding" in Language and that "she demonstrates a positive effort, contributes to discussion, has a good attitude, and completes class work." (Doc. 10-2, at 26-27; Doc. 10-6, at 75; Doc. 10-7, at 39). The ALJ compared this evidence to the testimony from Bonilla stating that N.L.M. was sometimes difficult to understand and that she will talk for three days and then stop. (Doc. 10-2, at 28; Doc. 10-6, at 6-7). The ALJ also considered Ms. Moyer's testimony that she has no difficulty understanding N.L.M., but that N.L.M. has slight problems with relating experiences, telling stories, and using language appropriate to the situation and listener. (Doc. 10-2, at 28; Doc. 10-6, at 30, 32). Thus, the ALJ cited to substantial evidence when considering N.L.M's linguistic limitations.

The ALJ adequately considered N.L.M.'s insomnia in assessing her limitations. The ALJ noted that N.L.M. was placed on prescription medication to help her sleep. (Doc. 10-2, at 21; Doc. 10-7, at 25-27). The ALJ also noted that on March 31, 2018, Bonilla stated N.L.M.'s sleep had improved. (Doc. 10-2, at 22; Doc. 10-7, at 18). However, on April 14,

2018, Bonilla stated that N.L.M. "continued to have difficulty with sleep and the psychiatrist increased [N.L.M.'s] dose of [medication]." (Doc. 10-2, at 22; Doc. 10-7, at 8-10). On May 26, 2018, Bonilla stated that N.L.M. "was sleeping well" and on December 4, 2018, N.L.M.'s "sleep was 'fine.'" (Doc. 10-2, at 22; Doc. 10-7, at 10; Doc. 10-8, at 20-22). On January 28, 2019, N.L.M.'s ability to sleep had deteriorated and she was given a different prescription to help her sleep. (Doc. 10-2, at 22-23; Doc. 10-8, at 15-17). On March 8, 2019, Bonilla stated that N.L.M. was still having difficulty sleeping but had not been taking her new medication because Bonilla had been too busy to refill the prescription. (Doc. 10-2, at 23; Doc. 10-8, at 9-11). Thus, the ALJ thoroughly discussed N.L.M.'s limitations regarding her sleep and insomnia. (Doc. 10-2, at 22-23).

It is not the role of the Court to substitute its judgment for that of the ALJ. *See* Social Security Act, § 205(g), 42 U.S.C.A. § 405(g). The standard the Court must employ is substantial evidence, which is deferential to the judgment of the ALJ. *Rutherford*, 399 F.3d at 552. It is the ALJ's duty, not the Court's duty, to weigh the evidence and resolve conflicts. *See Richardson*, 402 U.S. at 410 (clarifying that when the record contains conflicting medical evidence, the ALJ must weigh that evidence and resolve the conflict); *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). Substantial evidence supports the ALJ's findings regarding the severity of N.L.M.'s impairments. The ALJ relied on N.L.M.'s medical and educational records along with testimony from Bonilla and Ms. Moyer in assessing the severity of her limitations. (Doc. 10-2, at 19-29). Accordingly, substantial evidence supports the ALJ's consideration of N.L.M.'s other impairments.

20

C. Substantial evidence supports the ALJ's consideration of Mr. Hartman's opinion and the ALJ's use of the teacher questionnaire completed by Ms. Moyer.

Bonilla contends that "[t]he ALJ erred and abused her discretion by not affording proper weight to the Mental Residual Functional capacity Assessment from the treating source, Steven Hartman, as well as in considering the teacher questionnaire, which supported marked limitations in the functional domains." (Doc. 18, at 22).

The ALJ adequately considered the opinion of Mr. Hartman, LPC. (Doc. 10-2, at 29). As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); see also 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

However, the opinion of Mr. Hartman is not an acceptable medical source as he is a clinical mental health counselor. Morris v. Saul, 2021 WL 3889555, at *6 (M.D. Pa. Jan. 4, 2021) ("[C]lincial mental health counselors are not 'acceptable medical sources'"); 20 C.F.R. § 416.902(a)(1). Further, under the new regulations, treating physicians are "not entitled to any deference given [his or her] status as [a] 'treating physicia[n].'" See Duhl v. Kijakazi, No. 20-1123, 2021 WL 5909819, at *3 (W.D. Pa. Dec. 14, 2021); (Doc. 12-8, at 70).

The ALJ still considered the opinion of Mr. Hartman and found that his opinion was

not persuasive. (Doc. 10-2, at 29). The ALJ stated

> Mr. [Hartman], LPC, a counselor with [WellSpan] completed a Mental
> Residual Functional Capacity assessment on December 4, 2018. [N.L.M.] was
> in therapy from February 1, 2018, through December 2018. (Exhibit 6F.) Mr.
> [Hartman] opined that [N.L.M.] marked limitations in understanding,
> remembering, or applying information, interacting with others, in the ability to
> sustain concentration, persistence, and maintain pace, and in the ability to
> adapt or manage oneself. (Exhibit 6F.) I do not find this opinion to be
> supported or consistent with the overall evidence. [N.L.M.] was seen in therapy
> on average once a month. [N.L.M.] was seen for a medication check in March
> 2019 and in therapy for the last time in December 2018. The [WellSpan]
> discharge summary that was completed in March 2019 notes that [N.L.M.] had
> improved in all areas. [N.L.M.'s] overall record, including her grades, show
> she has much greater ability to function than Mr. [Hartman] has opined. For
> these reasons, his opinion is not persuasive.

(Doc. 10-2, at 29; Doc. 10-7, at 59-63).

Thus, the ALJ adequately discussed the opinion of Mr. Hartman and compared it with the

other evidence in the record in finding that the opinion was not persuasive. (Doc. 10-2, at 29).

The ALJ also relied on the teacher questionnaire completed by Ms. Moyer in her

functional domain analysis and considered its persuasiveness along with other evidence in the

record. (Doc. 10-2, at 20-28). Specifically, the ALJ discussed Ms. Moyer's teacher

questionnaire regarding N.L.M.'s ability to acquire and use information, attend and complete

tasks, and interact and relate with others. (Doc. 10-2, at 26-28).

For the domains of acquiring and using information and attending and completing

tasks the ALJ noted that "Ms. Moyer saw the claimant once every few months for counseling

and behavior" and discussed her answers in the teacher questionnaire under the two domains

and her notation that N.L.M.'s limitations are significantly less when on medication. (Doc.

10-2, at 26; Doc.10-6, at 28-29). Additionally, the ALJ explained her determination of the

persuasiveness of Ms. Moyer's responses and stated that she "considered that Ms. Moyer was

a school counselor and only saw [N.L.M.] once every few months [and that] Ms. Moyer also added comments that [N.L.M.] had significantly improved with medication." (Doc. 10-2, at 27; Doc. 10-6, at 29). Thus the ALJ explained that Ms. Moyer's responses "indicated . . . that the severity of the limitations may not have been an accurate assessment and instead, the objective grades, in 2018-2019, showing excellent, advanced, and highly proficient in the most subjects is a better indication of limitations under these domains" along with N.L.M.'s regular classroom attendance and lack of special education needs or summer school. (Doc. 10-2 at 27; Doc. 10-6, at 75).

For the domain of interacting and relating with others, the ALJ noted Ms. Moyer's responses to the teacher questionnaire and her comment that N.L.M. performs significantly better when on medication, but when she is not on medication she needs a lot of refocusing and repetition. (Doc. 10-2, at 28; Doc. 10-6, at 30, 32). The ALJ further considered N.L.M.'s school reports and mental therapy notes in combination with Ms. Moyer's answers to the teacher questionnaire and found a less than marked limitation in the domain of interacting and relating with others. (Doc. 10-2, at 28; Doc. 10-6, at 75; Doc. 10-8, at 10-35).

The ALJ clearly utilized and discussed Mr. Hartman's opinion and Ms. Moyer's responses to the teacher questionnaire in her opinion and the court may not reweigh the evidence in its determination. *See Burns*, 312 F.3d at 118. As such, substantial evidence supports the ALJ's use of the opinion of Mr. Hartman and the teacher questionnaire completed by Ms. Moyer as the ALJ utilized a wide array of evidence from the record in her analysis of N.L.M.'s functional domains.

23

### V.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision to deny Bonilla disability benefits be **AFFIRMED,** final judgment be issued in favor of the Commissioner, and the Clerk of Court be directed to **CLOSE** this case.

An appropriate Order follows.


Dated: February 22, 2022                            *s/ Karoline Mehalchick*

                                                    **KAROLINE MEHALCHICK**
                                                    **Chief United States Magistrate Judge**


24